IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SILICON ECONOMICS, INC., | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| FINANCIAL ACCOUNTING FOUNDATION, and FINANCIAL ACCOUNTING STANDARDS BOARD, | : | NO. 11-163 |
| Defendants. | : | |

**MEMORANDUM ON MOTION TO DISMISS**

**Baylson, J.**                                                                                                   **August 17, 2011**

      Silicon Economics, Inc. ("SEI") filed this action seeking damages and clarification of its ownership interest in its invention, "EarningsPower Accounting," which is the subject of U.S. Patent 7,620,573 (the "Invention"). SEI claims that the Financial Accounting Foundation ("FAF") and the Financial Accounting Standards Board ("FASB," collectively with FAF, "Defendants"), have unlawfully claimed a royalty-free license in the Invention and refuse to release any ownership interest in the Invention. SEI claims violations of federal antitrust law and California's Unfair Competition Law. SEI also seeks declaratory relief under California law.

      Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing and under Rule 12(b)(6) for insufficient pleading of each claim. (Mot. to Dismiss, ECF No. 18.) After careful consideration of Defendants' Motion and the parties' briefing and oral argument on August 11, 2011, the Court will grant Defendants' Motion, allowing SEI leave to amend the Complaint.

I. **Factual and Procedural History**

According to the Complaint in this matter, FASB is "the principal organization in the private sector for establishing standards of financial accounting which govern the preparation of financial statements by public companies in the United States." (Compl., ECF No. 1 ¶ 9.) FAF is a private, non-governmental, non-profit foundation that governs FASB. (Id. ¶ 4.)

SEI alleges that FASB "has at least 90% of the market for establishing and decreeing financial accounting standards in the United States," and the remainder of the market consists of individuals, academics, government bodies, corporations, and accounting firms that articulate accounting standards, as well as the International Accounting Standards Board. (Id. ¶ 10.)

SEI is one of these other participants and is attempting to establish more effective accounting standards in direct competition with FASB. (Id. ¶ 13.) To that end, SEI developed the Invention, an equation that "improv[es] the accuracy of net income measurement and embraces mark-to-market accounting of asset and liability values [to] yield[] accurate and current balance sheets." (Id. ¶ 19.) SEI contends the Invention resolves the fundamental accounting problem, i.e. either the balance sheet or the income sheet can be accurate and useful, but not both. (Id. ¶¶ 14, 19.)

Pertinent to this litigation, on July 6, 2006, FASB requested public comments "concerning the most basic objects for financial reporting and how to accomplish such objects." (Id. ¶ 20.) FASB's invitation also stated that "all comments received by the FASB are considered public information. Those comments will be posted to the FASB's website and will be included in the project's public record." (Id. ¶ 21.) SEI provided comments, including briefing on the Invention. (Id. ¶ 22.) SEI then participated in a roundtable discussion and SEI's

founder, Joel Jameson ("Jameson"), privately met with the FASB regarding the Invention. (Id.)

Several months later, Jameson became aware of certain terms and conditions on FASB's website, namely:

> "Any information or material you transmit . . . by . . . sending an e-mail . . . including information such as personal data, comments and suggestions (whether in response to a specific query or otherwise) will be treated as non-confidential and non-proprietary . . . . Unless we agree in writing in advance, anything you transmit, whether electronically or in hard copy may be used by the FAF/FASB and its affiliates for any purpose, including, but not limited to, reproduction, disclosure, transmission, publication, broadcast and posting. This means that the FAF/FASB may use the ideas, concepts, know-how or techniques you transmit . . . ."

(Id. ¶ 23) (the "Website Terms"). Unaware of the Website Terms prior to submitting his comments in July 2006, Jameson contacted FASB to clarify and confirm FASB did not claim any ownership interest in the Invention. (Id. ¶ 24.) After receiving no response for more than two years, Jameson again contacted FASB through legal counsel. (Id. ¶ 25.) In response, FASB "claimed that it ha[s] a royalty-free ownership interest in the SEI Invention . . . and categorically refused to release any such interest." (Id.)

After another few months passed, SEI filed suit in California federal court, but the complaint was dismissed for lack of personal jurisdiction over Defendants. (Id. ¶ 26); see Silicon Econ., Inc. v. Fin. Accounting Found., No. 10-1939, 2010 WL 4942468, at *7 (N.D. Cal. Nov. 24, 2010). During the course of that litigation, however, counsel for Defendants expressly disavowed a license to practice the Invention or any claim or ownership interest therein, and affirmed Defendants have no intention of claiming any ownership interest. (Compl. ¶ 27.) "Despite these admissions, [Defendants have] refused to release [their] purported ownership claims in the [Invention]." (Id.)

Still seeking clarity, SEI filed the instant Complaint asserting claims for restraint of trade and monopolization in violation of the Sherman Act, 15 U.S.C. §§ 1, 2; a claim for declaratory relief under California law; and a claim for unfair competition under California law. (Compl. ¶¶ 28-44.) On April 29, 2011, Defendants filed the instant Motion to Dismiss Plaintiff's Complaint With Prejudice for lack of jurisdiction and for failure to state a claim upon which relief can be granted. SEI also filed a Motion for a Preliminary Injunction (Mot., ECF No. 6), but agreed the Court should first rule on Defendants' Motion to Dismiss (Order, ECF No. 16).

## II. Jurisdiction and Standard of Review

### A. Jurisdiction

The Court has jurisdiction over SEI's antitrust claims pursuant to 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction over its California law claims under 28 U.S.C. § 1367(a). SEI contends venue is proper pursuant to 15 U.S.C. § 22. Defendants have not objected to venue in this District.

### B. Standard of Review

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction presents either a facial attack or a factual attack. CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008); see Fed. R. Civ. P. 12(b)(1). A facial attack concerns an alleged pleading deficiency, whereas a factual attack concerns the actual failure of a plaintiff's claim to comport factually with the jurisdictional prerequisites. CNA, 535 F.3d at 139.

On a facial attack, the Court must consider the allegations of the complaint as true. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). In contrast, there are three important consequences of a factual attack: (1) there is no presumption of truthfulness;

(2) the plaintiff bears the burden of proving subject matter jurisdiction; and (3) the Court has authority to make factual findings on the issue, and can look beyond the pleadings to do so. CNA, 535 F.3d at 145. Defendants appear to be making a facial attack against SEI's complaint. In their Opening Brief, Defendants assume the veracity of SEI's allegations and challenge the sufficiency of those allegations. (Opening Br., ECF No. 19 at 7-9); see also Danvers Motor Co. v. Ford Motor Co., 432 F.3d 286, 292 (3d Cir. 2005) (evaluating sufficiency of plaintiff's factual allegations in complaint on standing challenge).

As for Defendants' Motion pursuant to Rule 12(b)(6), the court must accept as true all well-pleaded factual allegations and must construe them in the light most favorable to the non-moving party. Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008).

According to the Third Circuit, Twombly v. Bell Atlantic Corp., 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), establish a three-pronged approach for evaluating the sufficiency of pleadings in all civil actions: first, the court must identify the elements the plaintiff must plead to state a claim; second, the court asks whether the complaint sets forth factual allegations or conclusory statements; third, if the complaint sets forth factual allegations, the court must assume their veracity and draw reasonable inferences in favor of the non-moving party, but then must determine whether the factual allegations plausibly give rise to an entitlement to relief. See Santiago v. Warminster Twp., 629 F.3d 121, 130 & n.7 (3d Cir. 2010); see Iqbal 129 S. Ct. at 1950, 1953. For the second step, the court should separate the factual and legal elements of the claims, must accept the well-pleaded facts as true, and may disregard any legal conclusions. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

The plaintiff's complaint must contain a short and plain statement of the claim showing

that the pleader is entitled to relief. W. Penn Allegheny Health Sys. v. UPMC, 627 F.3d 85, 98 (3d Cir. 2010). The complaint must state factual allegations that, taken as a whole, render the plaintiff's entitlement to relief plausible. Id. This does not impose a probability requirement, but instead calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Id. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to reasonably infer that the defendant is liable for the misconduct alleged. Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009).

"[J]udging the sufficiency of a pleading is a context-dependent exercise. Some claims require more factual explication than others to state a plausible claim for relief." UPMC, 627 F.3d at 98 (reversing district court's application of heightened scrutiny in antitrust context) (citation omitted).

Accordingly, the Court considers the factual allegations in SEI's complaint as true for all purposes of Defendants' Motion.

### III. Discussion

Defendants argue the Court should dismiss SEI's Complaint because SEI lacks standing under Article III and has failed to sufficiently plead its claims for relief. Defendants also argue the Court should decline to exercise supplemental jurisdiction over SEI's state law claims if the Court dismisses SEI's federal claims.

#### A. Standing

Defendants contend that SEI has failed to establish an actual case or controversy exists in this matter because it cannot satisfy the "injury-in-fact" and "fairly traceable" elements of constitutional standing. As such, they argue the Court lacks jurisdiction over this case. SEI

opposes Defendants' Motion and argues its claims are justiciable because Defendants' refusal to release its claimed ownership interest in SEI's patent has created uncertainty regarding SEI's ownership interest. In reply, Defendants contend any alleged harm is only theoretical because they have not made any use of the Invention and that SEI has failed to sufficiently allege any harm. The Court agrees with Defendants.

In its Opposition, SEI conflates Defendants' Article III and California declaratory relief arguments, but California law regarding declaratory relief is inapposite to the question of Article III standing. Article III of the Constitution limits the exercise of federal judicial power to adjudication of actual cases or controversies. Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 137 (3d Cir. 2009). This limitation is enforced through several justiciability doctrines, including, standing, mootness, ripeness, the political-question doctrine, and the prohibition on advisory opinions. Id.

Perhaps the most important of these doctrines is standing. Id. The "irreducible constitutional minimum" of Article III standing consists of three elements: (1) the plaintiff must have suffered a concrete, particularized injury-in-fact, which must be actual or imminent, not conjectural or hypothetical; (2) the injury must be fairly traceable to the challenged action of the defendant, and not the result of independent action of some third party not before the Court; and (3) the plaintiff must also establish that a favorable decision would likely redress the alleged injury. Id. at 137-38. Defendants argue SEI has failed to establish the first two elements.

SEI, as the party invoking federal jurisdiction, bears the burden of establishing these elements. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Each element must be supported in the same way as any other matter on which SEI bears the burden of proof, i.e. "with

the manner and degree of evidence required at the successive stages of the litigation." Id. On a motion to dismiss, allegations may suffice because they are assumed true. Id. Thus, to state an injury-in-fact sufficient to survive a motion to dismiss, SEI must sufficiently plead that it has suffered some concrete harm because of Defendants' conduct. See N.J. Physicians, Inc. v. President of the United States, ___ F.3d ___, No. 10-4600, 2011 WL 3366340, at *3 (3d Cir. Aug. 3, 2011) (noting "standing cannot be inferred argumentatively from averments in the pleadings bu rather must affirmatively appear in the record") (quotations omitted).

To satisfy the injury-in-fact element, the plaintiff must have suffered a palpable and distinct harm that affects the plaintiff in a personal and individual way. Id. at *3; Toll Bros., 555 F.3d at 138. In an action for declaratory relief, the plaintiff need not suffer the full harm expected, so long as there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment. Khodara Envtl., Inc. v. Blakey, 376 F.3d 187, 193-94 (3d Cir. 2004); St. Thomas-St. John Hotel & Tourism Ass'n v. Virgin Islands, 218 F.3d 232, 240 (3d Cir. 2000).

The injury must be concrete and particularized, and actual or imminent. Lujan, 504 U.S. at 564 n.2; N.J. Physicians, 2011 WL 3366340, at *3 (stating plaintiff must sufficiently allege both elements to establish standing). Intentions, without concrete plans, do not support a finding of actual or imminent injury. Lujan, 504 U.S. at 564 n.2 If there is no actual injury, the injury must be at least imminent. Id. Although an elastic concept, it cannot be stretched beyond its purpose which is to ensure the alleged injury is not too speculative but is "certainly impending." Id. Allegations of injury are insufficient when the plaintiff alleges injury at some future time and the acts necessary to make the injury happen are at least partly within the plaintiff's control. Id.

Nonetheless, "[i]njury-in-fact is not Mount Everest." Danvers, 432 F.3d at 294. The contours of the requirement, though not precisely defined, are very generous, requiring only allegations of some specific, identifiable trifle of injury. Id. (citing Bowman v. Wilson, 672 F.2d 1145, 1151 (3d Cir. 1982)).

In its Complaint, SEI alleges Defendants have created uncertainty regarding SEI's exclusive rights in the Invention, which has harmed SEI's reputation and goodwill. (Compl. ¶ 32.) SEI raises two other alleged injuries in its Opposition – SEI's dispute with Defendants has impeded its ability to seek financing and has had "substantial and immediate impact on the business of SEI" – but "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (Opp'n at 5, 7); see Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (quotations omitted).

Injury to reputation, including commercial reputation, may constitute a cognizable injury-in-fact for Article III standing. See Foretich v. United States, 351 F.3d 1198, 1211 (D.C. Cir. 2003) (citing Meese v. Keene, 481 U.S. 465, 473-77 (1987)); GTE Sylvania Inc. v. Consumer Prod. Safety Comm'n, 404 F. Supp. 352, 366 (D. Del. 1975). As for the alleged "uncertainty," the Court finds a decision from the Eastern District of Virginia instructive on the issue.

In Robishaw Engineering, Inc. v. United States, a patent-holder, who was negotiating a license agreement with the United States Army, filed suit against the United States claiming that the Army's assertion of a royalty-free license put a cloud on the patent and diminished its market value. 891 F. Supp. 1134, 1137 (E.D. Va. 1995). Judge Ellis acknowledged that patents represent legal rights, namely the right to exclude parties other than the government. Id. at 1149. He also recognized the "simple truism that the value of any legal right depends on the likelihood

of successfully enforcing it." Id. Thus, any cloud or uncertainty regarding enforceability diminishes the property's market value, and any party who seeks a judicial declaration to eliminate that uncertainty can point to the diminution in value as an injury-in-fact. Id. But if that uncertainty is always deemed sufficient, standing would become a meaningless requirement. Id.

To exclude the possibility of rendering standing meaningless, Judge Ellis determined that standing requires the cloud or uncertainty to consist of a sufficiently immediate, definite, and concrete threat to the legal right at issue. Id. Thus, the question is whether the defendant has taken definite and concrete steps to assert a claim or has at least threatened to assert a claim adverse to the plaintiff's interests. Id. at 1150. In Robishaw, the Army took no firm position, only suggesting that it may have a royalty-free license. Id. Therefore, Judge Ellis concluded the plaintiff had failed to sufficiently allege an injury-in-fact based on a cloud on its patent. Id. SEI has similarly failed to sufficiently allege an injury in fact.

As for the alleged harm to reputation and goodwill, SEI offers only bald assertions of injury. SEI has not offered any factual allegations on which it bases its contention it has suffered harm to reputation or goodwill. Failing to meet its burden of alleging standing at this stage of the litigation, the Court will dismiss SEI's Complaint without prejudice to SEI amending its Complaint.[1]

---

[1] The cases SEI relies on do not persuade the Court otherwise. In Leonard Carder, LLP v. Patten, Faith & Sandford, the California Court of Appeals found an actual controversy justifying jurisdiction over the claim for state-law declaratory relief. 116 Cal. Rptr. 3d 652, 653 (Cal. Ct. App. 2010). Two law firms were disputing the allocation of legal fees from settlement of a class action. Id. at 654. The money was held in trust and the defendant claimed it was owed forty percent based on a prior agreement. Id. The plaintiff disputed the existence of the agreement and sent a check for the significantly lower lodestar amount, with a note that the payment was in "final settlement." Id. Before cashing the check, the defendant amended the memo line to reflect the payment was "credit toward final settlement." Id. Unlike in this case,

B.  **Antitrust Claims**

Defendants offer two arguments in favor of dismissal of SEI's antitrust claims. First, they contend they are not engaged in trade or commerce and, therefore, the Sherman Act does not apply to them. Defendants also argue SEI has failed to sufficiently plead a relevant product market because no market exists; it has not sufficiently pled an antitrust injury because Defendants and SEI do not compete; Defendants maintain a monopoly through the Securities and Exchange Commission ("SEC") not any anti-competitive conduct in violation of § 2; and Defendants have engaged in unilateral conduct, not any combination in violation of § 1.

In response, SEI focuses on establishing that Defendants' non-profit status is not dispositive of the trade or commerce issue. Further, SEI contends there is commerce involved because Defendants allegedly misappropriated SEI's patent and SEI is a commercial entity. As for the substance of the claims, SEI argues it sufficiently pled antitrust injuries of reduced innovation and excluded competition. As for the relevant market, SEI argues the Court must also consider potential markets, and SEI could potentially compete with Defendants. For its § 2 claim, SEI contends Defendants are unlawfully maintaining their monopoly by taking SEI's

---

each party had taken a firm position on the amount due the defendant, which created an ongoing controversy warranting declaratory relief. See id. at 656-57.

In Principal Life Insurance Co. v. Robinson, the Ninth Circuit concluded an actual dispute existed regarding the calculation of rent under a lease agreement. 394 F.3d 665, 668 (9th Cir. 2005). The plaintiff had previously attempted to sell its interest in the lease, but the dispute regarding the rent calculation undermined the deal. Id. The Ninth Circuit found this past difficulty suggested the plaintiff would continue to have difficulty, which warranted declaratory relief. Id. at 672. SEI, however, has not alleged any such past difficulties or experiences with the Invention, making only conclusory assertions that its title is uncertain and that is has suffered harm to reputation and goodwill. Without more facts, SEI's circumstances are distinguishable from those in Leonard Carder and Principal Life.

property, and for the § 1 claim, SEI argues the Website Terms may form an agreement in restraint of trade and both parties to an agreement need not share anti-competitive intent.

In reply, Defendants argue they are not engaged in trade or commerce because their accounting standards are freely available to anyone in the world and are available without charge and without payment to Defendants, save for sales of bounded volumes and unrelated licensing arrangements. They further contend that the challenged conduct, i.e. adoption of and adherence to the Website Terms, is not motivated by commercial objectives or advantages despite receipt of government funds. In addition, Defendants argue they are not participants in the commercial market for accounting standards and SEI only alleges injuries to itself rather than to competition. Further, Defendants maintain they did not engage in concerted action, but unilaterally adopted the Website Terms.

1. **"Trade or Commerce"**

The purpose of antitrust law is to regulate commerce, which entails determining the applicability of antitrust laws by considering the nature of the activity being challenged, not the nature of the organization engaged in the activity. 1B Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 260, at 158, 161 (3d ed. 2006); see Apex Hosiery Co. v. Leader, 310 U.S. 469, 493 n.15, 495 (1940); see also United States v. Brown Univ., 5 F.3d 658, 665 (3d Cir. 1993) (finding antitrust laws apply to non-profit organizations engaged in commerce). Thus, the threshold issue is whether the antitrust laws even apply to the challenged conduct. Brown Univ., 5 F.3d at 665.

It is axiomatic that antitrust laws regulate only transactions that are commercial in nature. Id. Courts classify a transaction as commercial in nature based on the nature of the challenged

conduct in light of the totality of the surrounding circumstances. Id. at 666; see Areeda & Hovenkamp, supra ¶ 262a, at 177 (endorsing objective test which asks whether antitrust defendants are likely to receive direct economic benefit as a result of any reduction in competition in market in which target firms operate). An effect on prices is not essential. Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 213 n.7 (1959). The Third Circuit's approach does not encompass restraints that result in incidental economic effects. See Pocono Invitational Sports Camp, Inc. v. NCAA, 317 F. Supp. 2d 569, 584 (E.D. Pa. 2004) (Brody, J.).

On a motion to dismiss, the Court should determine whether the challenged conduct is commercial based on the factual allegations in the complaint. See Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 66 (2d Cir. 1997). In this case, SEI is challenging Defendants' adoption of and adherence to the Website Terms, particularly the reservation of rights to use any submitted ideas for any purpose, and subsequent refusal to release any ownership interest. (Compl. ¶¶ 20, 27.)[2] SEI alleges that Defendants have unlawfully claimed a proprietary interest for the purpose of excluding SEI as a competitor in the market for establishing accounting standards in the United States. (Id. ¶ 37.) SEI contends Defendants' conduct lessens competition, discourages public comment, discourages innovation, and entrenches Defendants' monopoly. (Id. ¶¶ 38, 40.)

It is important at the outset to define the apparent scope of SEI's antitrust claims against Defendants. SEI is not challenging FASB's conduct in setting standards, which is a more common subject of antitrust review. Instead, SEI is challenging Defendants' Website Terms

---

[2] As noted below, Defendants' counsel's unconditional recantation of an ownership interest at oral argument must be given some weight in assessing Plaintiff's allegations, which will presumably be clarified in an amended complaint.

which apply to voluntary submissions of solicited comments.

Federal courts have experience with the "trade or commerce" issue, particularly in the context of the NCAA's regulation of student athletics. Courts have concluded that when the challenged conduct consists of academic rules or player-eligibility requirements, the conduct is non-commercial in nature. E.g., Smith v. NCAA, 139 F.3d 180, 185-86 (3d Cir. 1998) (holding Sherman Act does not apply to NCAA rules and eligibility requirements that primarily seek to ensure fair competition in collegiate sports, not to provide the NCAA with a commercial advantage), rev'd on other grounds, NCAA v. Smith, 525 U.S. 459 (1999); Pocono Invitational, 317 F. Supp. 2d at 583-84 (concluding rules relating to recruitment at summer camps are like eligibility rules and were enacted in spirit of promoting amateurism in keeping with NCAA's general goals); Collegiate Athletic Placement Serv. Inc. v. NCAA, No. 74-1144, 1974 WL 998, at *4-5 (D.N.J. Aug. 22, 1974) (finding NCAA policy against for-profit companies that find athletic scholarships for student-athletes was motivated by intent to ensure academic standards and amateurism, not by anti-competitive motive or intent).

But when the challenged conduct restrains revenue, output, or salaries, the rules are almost always commercial. E.g., NCAA v. Bd. of Regents of Univ. of Okla., 468 U.S. 85, 113 (1984) (finding NCAA's television plan amounted to unlawful horizontal restraint on members' ability to sell television rights to their games because it operated to raise prices and reduce output); Law v. NCAA, 34 F.3d 1010, 1012 (10th Cir. 1998) (affirming injunction against NCAA's enforcement of rule that limited salaries of entry-level coaches as unlawful horizontal restraint on trade). The Court finds these cases useful in this case because they suggest a spectrum of conduct to evaluate Defendants' alleged conduct.

Compared to this range of conduct, SEI has not sufficiently alleged that Defendants' conduct is commercial in nature. Considering the totality of circumstances and SEI's allegations, FASB sought voluntary comments from the public in an effort to establish and promulgate accounting standards for public companies within the United States, which is FASB's exclusive prerogative.[3] Defendants also adopted the Website Terms to reserve FASB's right to use any submissions for any purpose, including reproduction, disclosure, and publication. SEI's allegations do not suggest conduct that is commercial in nature – there is no sale, no exchange, and no production. Compare, e.g., Brown Univ., 5 F.3d at 668 (determining financial assistance for students is part and parcel of price-setting process and, thus, is a commercial transaction), with, e.g., Apex Hosiery, 310 U.S. at 501-02 (concluding labor union strike intended to compel company to accede to demands not trade or commerce despite delaying interstate shipment of goods); Marjorie Webster Junior Coll., Inc. v. Middle States Ass'n of Colls. & Secondary Schs., 432 F.2d 650, 654-55 (D.C. Cir. 1970) (finding non-profit organization's decision to deny accreditation to for-profit school not commercial absent intent or purpose to affect commercial aspects).

---

[3]  The SEC has recognized FASB as the only entity whose work-product can be recognized as "generally accepted" for the purpose of public companies' financial reporting. Commission Statement of Policy Reaffirming the Status of the FASB as a Designated Private-Sector Standard Setter, 68 Fed. Reg. 23,333, 23,333-34 (May 1, 2003); see Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, § 108, 116 Stat. 745, 768-69 (codified at 15 U.S.C. § 77s). Congress also ensured FASB would remain independent from the targets of its standards by creating an independent source of funding for FASB so that it no longer had to depend on voluntary contributions or sales of its standards. Donna M. Nagy, Playing Peekaboo with Constitutional Law: The PCAOB and Its Public/Private Status, 80 Notre Dame L. Rev. 975, 987-89 (2005); see Sarbanes-Oxley Act § 109 (codified at 15 U.S.C. § 7219).

SEI contends FASB's conduct is commercial because SEI itself is a commercial enterprise and Defendants misappropriated its patented Invention. But it is the nature of the conduct that controls, not the nature of the organizations. The alleged conduct enables FASB to solicit voluntary submissions of accounting-standard proposals, and then perform its function of establishing and promulgating those standards without being hamstrung by subsequent intellectual property claims. Any economic consequence is an indirect by-product of these efforts. SEI has not alleged that Defendants derive any economic benefit from the Website Terms – it does not allow them to control production, innovation, or quality by asserting an exclusive right in submitted concepts and it does not permit them to set a price. All the Website Terms appear to do is facilitate FASB's consideration and promulgation of appropriate accounting standards for public companies in the United States. SEI's allegations suggest nothing more.

For the foregoing reasons, the Court concludes that SEI has failed to sufficiently allege that Defendants are subject to antitrust scrutiny because it has failed to allege facts showing the challenged conduct is commercial in nature. The Court will grant SEI leave to amend its complaint to address these deficiencies. The Court reserves decision on certain other legal arguments made by Defendants until SEI has amended its Complaint.

### C. California Law Claims

The Court will reserve decision on exercising supplemental jurisdiction until SEI has the opportunity to amend those claims over which the Court has original jurisdiction. The Court will determine at that time whether to exercise supplemental jurisdiction over SEI's California law claims. See 28 U.S.C. § 1367(a), (c).

## IV. Court's Review of Discussion at Oral Argument

Prior to oral argument, the Court posed questions in a letter to counsel, including whether the parties would agree to expedite the hearing on the declaratory judgment aspect of the case and stay the antitrust claims. Plaintiff's counsel indicated that Plaintiff was interested in such a proposal. Defendants would prefer a decision on the grounds stated in its Motion to Dismiss before entertaining such an agreement.

After discussing whether Plaintiff sufficiently pleaded its claims, it became obvious to the Court that Plaintiff would welcome the chance to amend the complaint, if only to provide more factual allegations, as now required by Twombly and Iqbal. The Court indicated it would grant that relief.

The argument contained many good points about the value of standard-setting organizations having an open mind to suggestions and ideas put forward by segments of the industry the organization serves. Defendants assert vigorously that it must have the ability to learn from submissions, such as those made by Plaintiff, and to consider and possibly use them in evolving formulations of industry standards. The Court believes that this is sound public policy and that the antitrust laws were not designed to interfere with such a process.

It also become clear that Plaintiff, as of yet, has not tried to gain commercial value from its patent, but understandably reserved the right to do so in the future.

At the argument, defense counsel unconditionally renounced any ownership interest by Defendants in Plaintiff's Invention. After the argument, the Court indicated it would grant leave to Plaintiff to amend its Complaint. The Court also noted that the positions of the parties should be amenable to a settlement of this dispute, and that a prolonged litigation over such issues as

standing, relevant markets, and anti-competitive intent do not seem to be necessary for Defendants to continue their work, and for Plaintiff to, if it so desires, use its patent in a commercial setting. The Court encouraged the parties to work towards a written agreement and, if requested, the undersigned will be available after September 18th to meet with counsel, assuming they have made some progress towards agreement on a written statement and both are desirous of completing the agreement as a means of settling this case.

For the above reasons, Plaintiff is granted leave to file an amended complaint by September 30, 2011.

### V. Conclusion

For the foregoing reasons, the Court will **grant** in part and **deny** in part Defendants' Motion to Dismiss. The Court will grant SEI leave to amend its Complaint in conformity with this Memorandum by September 30, 2011.

An appropriate Order will follow.

O:\CIVIL 11-12\11-163 Silocon v. Financial Accounting\SEI - MTD Memo 8-17-11.wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SILICON ECONOMICS, INC., : CIVIL ACTION
:
    Plaintiff, :
:
v. :
:
FINANCIAL ACCOUNTING FOUNDATION, : NO. 11-163
and FINANCIAL ACCOUNTING STANDARDS :
BOARD, :
:
    Defendants. :

## ORDER

AND NOW, on this 17th day of August, 2011, upon careful consideration of Defendants' Motion to Dismiss (ECF No. 18), the parties' briefing, and oral argument on the Motion, it is hereby ORDERED as follows:

1. Defendants' Motion is GRANTED in part and DENIED in part in accordance with the accompanying Memorandum.

2. Plaintiff Silicon Economics, Inc. is granted leave to file an amended complaint to cure the deficiencies identified in the accompanying Memorandum by September 30, 2011.

3. Defendants shall have twenty-one (21) days from service of an amended complaint to answer, move, or otherwise plead.

4. Plaintiff shall respond to any defense motion or other pleading within twenty-one (21) days of service of such motion or pleading.

5. Defendants shall reply, if at all, within fourteen (14) days of service.

BY THE COURT:

_____
Michael M. Baylson, U.S.D.J.

O:\DE Cases\11-163 Silicon v. Financial\SEI - MTD Order.wpd